UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Claudette T. Rasmussen-Trcka,

Plaintiff,

v.

John G. Kinnard and Company, Incorporated, and Kinnard Investments, Incorporated,

Defendants.

Civ. File No. 00-1846 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendants' Motion to Dismiss and Motion for Sanctions. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss and denies Defendants' Motion for Sanctions.

**BACKGROUND**

Plaintiff Claudette Rasmussen-Trcka was employed with Defendant John G. Kinnard and Company ("Kinnard") beginning in April 1996 as Vice President, Senior Analyst of Public Finance. Plaintiff's employment was governed by an Investment Executive Employment Agreement, which provided in relevant part:

> Arbitration. Kinnard and Employee agree that any dispute regarding or arising out of this Agreement, the Employee's employment at Kinnard, or any event occurring in connection with Employee's employment or termination of employment at Kinnard, including but not limited to claims of fraud in the inducement of this contract, defamation, discrimination, or harassment, shall be submitted to arbitration pursuant to the Federal Arbitration Act. If Employee asserts any claims against Kinnard for which he or she seeks recovery of attorney fees, and if Kinnard prevails in such arbitration or other legal proceeding, Employee agrees to pay Kinnard the reasonable costs and

FILED DEC 29 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD DEC 29 2000
DEPUTY CLERK

> attorney fees that Kinnard incurs in defending against any claims brought against it. Such arbitration will be conducted before the National Association of Securities Dealers, Inc. ("NASD") in accordance with the NASD Code of Arbitration Procedure, or if the NASD refuses to accept jurisdiction, before the American Arbitration Association ("AAA") under the AAA's Securities Arbitration Rules.

(Keon Aff., Ex. A at 2.)

On February 22, 1999, Kinnard terminated Plaintiff's employment. Thereafter, Plaintiff filed a charge of discrimination with the EEOC against Kinnard. After receiving her right to sue letter, Plaintiff filed the underlying Complaint against Kinnard and, Kinnard Investments, and Miller, Johnson & Kuehn, Inc.,[1] alleging gender discrimination, sexual harassment, and retaliation under Title VII and the Minnesota Human Rights Act ("MHRA"), and defamation, tortious interference with current and prospective business clients, and denial of commissions. Defendants have moved to dismiss the Complaint on the basis that Plaintiff has an enforceable agreement to arbitrate to which she has not adhered and to dismiss Kinnard Investments as a party. Defendants have also moved for sanctions, arguing that it notified Plaintiff of her obligation to arbitrate these claims before she commenced the underlying lawsuit.

**DISCUSSION**

**A. Standard**

A complaint that alleges claims subject to an arbitration agreement is properly

---

[1] By stipulation filed September 5, 2000, the parties agreed to dismissal without prejudice of Plaintiff's claims against Defendant Miller, Johnson & Kuehn, Inc.

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Lang v. Burlington Northern Railroad Co., 835 F. Supp. 1104, 1106 (D. Minn. 1993). The Court may consider matters outside the pleadings on a Rule 12(b)(1) motion without converting the motion into one for summary judgment. Osborn v. U.S., 918 F.2d 724, 728 n.4 (8th Cir. 1990).

**B. Analysis**

The Federal Arbitration Act ("FAA") provides that:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Arbitration agreements that encompass claims arising out of federal statutes are generally enforceable under the FAA. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 23 (1991) (compelling arbitration of claims arising under the ADEA). Parties who agree to arbitrate a statutory claim do not relinquish their substantive rights under that statute. Id. at 26. Rather, an arbitration agreement serves only as a specialized choice-of-forum provision that identifies the "situs of the suit" and the specific sets of procedures governing its resolution. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 630 (1985). Absent an express congressional intent to preclude a waiver of judicial remedies for the statutory rights at issue, the Court will enforce the parties' agreement to arbitrate the statutory claims. Gilmer, 500 U.S. at 26. The Eighth Circuit has concluded that Title VII claims are subject to individual consensual agreements to arbitrate. Patterson v. Tenet

Healthcare, Inc., 113 F.3d 832, 837 (8th Cir. 1997).

Arbitration is a matter of contract between the parties. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). A court can only compel arbitration of a dispute that the parties have agreed to arbitrate. Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Accordingly, the Court must determine whether a valid arbitration agreement exists between the parties, whether this particular dispute falls within the scope of the agreement, and whether legal constraints independent of the agreement prevent the arbitration of this dispute or render the arbitration agreement unenforceable. Mitsubishi, 473 U.S. at 626-27.

1. Validity of Agreement to Arbitrate

Before a party may be compelled to arbitrate under the FAA, the district court must engage in a limited inquiry to determine whether a valid agreement exists between the parties. Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994). When two parties agree to arbitrate a dispute, the Court should enforce that agreement. Mitsubishi, 473 U.S. at 625-26. In the present matter, at the outset of her employment, Plaintiff specifically agreed to arbitrate "any dispute regarding or arising out of this Agreement, [her] employment at Kinnard, or any event occurring in connection with [her] employment or termination of employment at Kinnard, including but not limited to claims of fraud in the inducement of this contract, defamation, discrimination, or harassment." (Keon Aff., Ex. A at 2.) Plaintiff argues that the arbitration agreement is unenforceable because (1) Defendants breached the

Employment Agreement; (2) her agreement to arbitrate was not knowing and voluntary; and (3) the arbitration agreement deprives her of her statutory rights.

A. Breach of Employment Agreement

First, Plaintiff asserts that Defendants breached the Employment Agreement by unilaterally changing the compensation package that supported the original employment contract in violation of the terms of the employment contract. Plaintiff asserts that Defendants' breach was a failure of consideration that rendered the entire agreement, including the arbitration clause, unenforceable.

The Supreme Court's decision in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) is instructive in this matter. In Prima Paint, the plaintiff sought rescission of a consulting agreement based on fraud in the inducement of the contract. The plaintiff also sought to enjoin the defendant from proceeding with arbitration under the terms of the contract. The Supreme Court addressed whether the federal court or an arbitrator should resolve the claim for fraud in the inducement of the contract. The Court distinguished between fraud in the inducement of the entire contract and fraud in the inducement of the arbitration clause itself. According to the Court, "if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it." Id. at 403-04. However, a claim of fraud in the inducement of the contract as a whole is properly left to arbitration, because it does not go to the "making and performance of the agreement to arbitrate." Id. at 404.

The Eighth Circuit applied this reasoning even more recently, concluding that a lack of consideration defense applied to the contract as a whole, not just the arbitration clause, and therefore, was clearly a matter for the arbitrator. Houlihan, 31 F.3d at 696 n.5 (noting also that "[a]s counterintuitive as it may seem, under Prima Paint a dispute over the making of a contract can arise out of that same contract, and thus be subject to arbitration"). Accordingly, the Court concludes that because Plaintiff's claim with respect to consideration relates to the contract as a whole, it is subject to mandatory arbitration.

B. Knowing and Voluntary

Next, Plaintiff claims that because the parties adopted the National Association of Securities Dealers, Inc. ("NASD") Code as part of the contract,[2] and the NASD amended its Code with respect to arbitrating employment discrimination claims *after* Plaintiff signed her agreement to arbitrate, her agreement to arbitrate discrimination claims was somehow not "knowing and voluntary." According to the recently amended NASD Code, "[a] claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose." NASD Code Rule

[2] The Court disagrees that the parties expressly adopted the NASD Code. The parties have agreed to conduct the arbitration before the NASD in accordance with the NASD Code if NASD accepts jurisdiction. However, because it is not clear whether the NASD would accept jurisdiction over these claims and the parties have agreed, alternatively, to arbitrate before the American Arbitration Association under the AAA's Securities Arbitration Rules, the Court cannot conclude that the parties clearly adopted Section 35 of the NASD Code.

10201(b). Plaintiff asserts that because she entered her agreement to arbitrate before these changes to the NASD Code were made, her agreement to arbitrate cannot be considered clear, unmistakable, knowing, and voluntary, presumably because she did not know that she was not required to arbitrate such claims. The Court is not persuaded. In its evaluation of the arbitration agreement, the Court must apply ordinary principles of Minnesota contract law. First Options, 514 U.S. at 944. Under Minnesota law, an unequivocal and positive statement that complies with the requirements of an offer constitutes a valid acceptance. Minar v. Skoog, 50 N.W.2d 300, 302 (Minn. 1951). In the absence of fraud, mistake, duress, coercion, or unconscionable terms, a literate party who signs a contract in ignorance of its contents remains bound by its terms and conditions. Johnson v. Hubbard Broadcasting, Co., 940 F. Supp. 1447, 1454 (D. Minn. 1996); Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982). Failing to read or understand the language of a contract serves as no defense under the law. N&D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 727 (8th Cir. 1976).

Plaintiff is a successful professional who joined Kinnard after "twenty-plus years of success in the fixed income investment banking community." (Compl. ¶ 7.) Plaintiff began work with Kinnard only after entering into a "carefully negotiated" compensation package, which included the arbitration clause. (Id. at ¶ 8.) The arbitration clause specifically provided that the parties would arbitrate harassment and discrimination claims. Plaintiff signed the two-page Employment Agreement. By signing the Employment Agreement, Plaintiff, a sophisticated and experienced businesswoman, unequivocally expressed an intent

to enter a binding agreement with Kinnard to arbitrate her claims, including harassment and discrimination claims.

C. Waiver of Statutory Rights

Finally, Plaintiff argues that the arbitration clause is unenforceable because the attorney's fee and cost provision in the clause conflicts with Title VII, the MHRA, and public policy, thereby depriving her of her statutory rights. The arbitration clause provides that:

> If Employee asserts any claims against Kinnard for which he or she seeks recovery of attorneys fees, and if Kinnard prevails in such arbitration or other legal proceeding, Employee agrees to pay Kinnard the reasonable costs and attorney fees that Kinnard incurs in defending against any claims brought against it.

(See Keon Aff., Ex. A at 2). Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). The MHRA provides that "[i]n any action or proceeding brought pursuant to this section the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." Minn. Stat. § 363.14, subd. 3.

The prevailing party fees provision of the arbitration agreement does not necessarily conflict with the plain language of these statutes. Nevertheless, Plaintiff asserts that the attorney's fees and cost provision of the arbitration agreement conflicts with the way in which courts have interpreted when a prevailing defendant is entitled to attorney's fees and

costs. Plaintiff argues that courts have interpreted the discretionary language of Title VII and the MHRA to provide that a "prevailing defendant" is distinguishable from a "prevailing plaintiff," and entitled to reasonable attorneys fees and costs only when the plaintiff's claims are frivolous, unreasonable, without foundation, or brought in bad faith. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 420-22 (1978); see also Bilal v. Northwest Airlines, Inc., 537 N.W.2d 614, 620 (Minn. 1995). Thus, she claims that the Agreement, which purports to allow Kinnard to recover fees regardless of the merit of Plaintiff's claims, is contrary to Title VII and the MHRA.

Plaintiff neither abandoned nor relinquished her substantive rights when she agreed to arbitrate her discrimination claims. See Gilmer, 500 U.S. at 26 (finding that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.")(citation omitted). In determining whether Kinnard has "prevailed" in a manner sufficient to trigger its right to reasonable attorney's fees and costs on the discrimination claims, the arbitrator would apply the same interpretation of a "prevailing defendant" under Title VII or the MHRA as courts apply. The "risk" that the arbitrator would interpret the arbitration provision inconsistently with case law is "too speculative to justify the invalidation of an arbitration agreement." See Green Tree Financial Corp.-Ala. v. Randolph, ---S.Ct.---, No. 99-1235, 2000 WL 1803919, at *7 (Dec. 11, 2000) (finding that risk that Plaintiff would be charged prohibitive costs was too speculative to invalidate arbitration

agreement); see also Johnson, 940 F. Supp. at 1462 (finding that question whether Plaintiff waived her statutory right to attorney's fees under Title VII was premature). Indeed, "to invalidate the agreement on that basis would undermine the liberal federal policy favoring arbitration." Green Tree, 2000 WL 1803919, at *7 (citation omitted). Furthermore, such a finding would conflict with prior Supreme Court holdings that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration" and of proving that "Congress intended to preclude arbitration of the statutory claims at issue." Id. (citation omitted). Accordingly, the Court finds that a valid arbitration agreement exists between the parties.

2. Scope of Agreement

The parties raise two issues with respect to the scope of the agreement: (1) whether the court or an arbitrator decides arbitrability; and, (2) if the court decides arbitrability, what issues are within the scope of the arbitration agreement. As a general matter, courts determine whether the parties agreed to submit a dispute to arbitration unless the parties clearly and unmistakably agree otherwise. First Options, 514 U.S. at 943. Defendants contend that Plaintiff clearly and unmistakably agreed to submit every dispute, including a dispute over who decides arbitrability, to arbitration. Defendants point to the language in the arbitration clause that "any dispute regarding or arising out of this Agreement" shall be submitted to arbitration. (Keon Aff, Ex. A at 2). Defendants compare this provision to the language of Section 35 the NASD Code, which provides that "[t]he arbitrators shall be

empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties." FSC Securities Corp. v. Freel, 14 F.3d 1310, 1312 (8th Cir. 1994) (citing Section 35 of the NASD Code). In Freel, the Court held that "the parties' adoption of [Section 35 of the NASD Code] is a clear and unmistakable expression of their intent to leave the question of arbitrability to the arbitrators." Id. at 1312-13.

Although worded broadly, the arbitration clause at issue here does not specifically address the issue of arbitrability. "[T]he law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement.'" First Options, 514 U.S. at 944 (citation and quotation omitted). The reason is simple. "A party often might not focus upon the question [of who should decide arbitrability] or upon the significance of having arbitrators decide the scope of their own powers." Id. at 945 (citation omitted). As the Supreme Court noted:

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

Id. (citation omitted). The language of the arbitration clause in this case does not provide

"clear and unmistakable" evidence of the parties' intent to submit the issue of arbitrability to the arbitrator. First Options, 514 U.S. at 943-45; McLaughlin Gormley King Inc. v. Terminix Int'l Co., 105 F.3d 1192, 1193 (8th Cir. 1997). Accordingly, the Court must decide what issues are within the scope of the arbitration agreement.

The Court concludes that the scope of the arbitration clause is broad enough to include Plaintiff's merits-related claims for gender discrimination, sexual harassment, retaliation, defamation, failure to pay commissions, and tortious interference with her business relations.

Defendants assert that Kinnard Investments should be dismissed as a party to this action, as Plaintiff has failed to allege facts sufficient to justify piercing the corporate veil. The Court concludes that the arbitrator should also decide whether Kinnard Investments is a proper party to this action.

4. Enforceability

Plaintiff also challenges the enforceability of an agreement to arbitrate the Title VII and MHRA claims in this case. However, statutory discrimination claims are arbitrable. See Gilmer, 500 U.S. at 26; Patterson, 113 F.3d at 837. Furthermore, Congress specifically approved alternative dispute resolution, including arbitration, to resolve disputes arising under Title VII. Johnson, 940 F. Supp. at 1457 (citing Pub. L. 102-166); see also Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 803-04 (Minn. 1995) (finding that the FAA preempts the MHRA with respect to the MHRA's express prohibition on a prospective agreement to waive the statutory right to a judicial forum in the context of arbitration). Finally, this Court

has already noted that Plaintiff neither abandoned nor relinquished her substantive rights when she agreed to arbitrate her statutory claims. In sum, the Court finds that the arbitration agreement is enforceable with respect to Plaintiff's claims under Title VII and the MHRA.

### C. Sanctions

Defendants argue that because Plaintiff's claims are clearly subject to arbitration, the Court should award attorney's fees and costs pursuant to Federal Rule of Civil Procedure 11, in connection with these motions. Plaintiff has raised legitimate issues regarding arbitrability in this matter, and therefore, the Court concludes that sanctions are not appropriate.

## CONCLUSION

Based on all the files, records, and proceedings herein, the Court grants in part and denies in part Defendants' motion to dismiss and denies Defendants' motion for sanctions.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Clerk Doc. No. 5) is **GRANTED IN PART AND DENIED IN PART**;
2. Defendants' Motion to Dismiss Plaintiff's claims for gender discrimination, sexual harassment, retaliation, defamation, failure to pay commissions, and tortious interference with her business relations is **GRANTED**;
3. Defendants' Motion to Dismiss Kinnard Investments as a party is **DENIED**; and

4. Defendants' Motion for Sanctions (Clerk Doc. No. 7) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 29, 2000

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: DEC 29 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*